STATE v. STEPHEN L. GARDNER.

*Appeal—Assignment of Error—Judge's Charge.*

1. It is the duty of the appellant to make up the case for the Supreme Court, so that the errors are distinctly pointed out, and if this is not done, they will not be considered.

2. So, where the defendant assigned as error, that the trial Judge laid down an · abstract principle of law, which had no connection with the case, in a way to prejudice the prisoner, but the case on appeal did show to what the exception related, the Court refused to consider it.

3. The trial Judge has the right in his charge to the jury, to explain to them the difference between positive and negative evidence, and an illustration which he gives to explain the difference, is not prejudicial to the prisoner, when he tells the jury that it is merely given as an explanation, and that they must determine the fact, according to the weight they see fit to give to the evidence.

(*Flaniken* v. *Lee*, 1 Ired., 293 ; *State* v. *Cowan*, 7 Ired., 239 ; *Henderson* v. *Crouse*, 7 Jones, 623, cited and approved).

Indictment for an assault and battery, tried before *Phillips, Judge,* and a jury, at Spring Term, 1885, of the Superior Court of Union county.

The prosecutrix, Sarah R. Smith, being examined on the part of the State, testified in substance as follows: The difficulty occurred at her house, about a stolen cow, belonging to her, that the defendant said that some person had told him that she said he had stolen. He began to curse her, and jerked her up by the left hand out of the rocking-chair in which she was sitting, and beat her with a seasoned stick, about three feet long, and one and a half inches thick, giving her three licks on the head, and leaving a scar. That she did not strike him with the chair, nor did she rise from the chair before he put his hands upon her. That her husband is dead; he left her some six or seven years before his death; and she had two children, and her husband was the father of one of them.

Dr. Caldwell, a witness for the State, testified that he was called to examine the wounds. One was on the top of the head, which cut through the skin, and was one or one and a half inches in length; he trimmed the hair and put a plaster on the wound. There were besides, some knots on her head, and she was in bed when he got there, about 10 o'clock at night.

The prosecutrix was further corroborated by the testimony of Rosa Baker, who swore she was present and heard the conversation about the cow. The defendant accused her sister of saying he had stolen her cow. She denied saying so, and the defendant caught hold of her arm, and lifting her up, struck her three licks with a stick. Her father went to the door about the time he stopped hitting her, and she was then carrying her sister, the prosecutrix, out of the room. She was married, and had one child.

James Baker, the father of the prosecutrix, testified, that he heard the defendant say to his daughter, "God d—n you, you are in your own room, but get up;" he heard three licks; he ran to the door, and the defendant was standing in front of her, and

she was covered with blood from head to foot; he fired off his pistol, when he was caught hold of. He saw the stick; it was one and a half inches thick at the big end, but was splintered at the small end, and he therefore thought he must have struck her with the little end. Taylor McCall and his daughter Rosa were there.

One Taylor was examined for the defence, who testified, that he was present when the difficulty occurred. There were present in the room, the defendant, McCall, and the prosecutrix. Rosa Baker had been in there, but had gone out. The defendant and the prosecutrix commenced grumbling about a cow, which she said defendant had stolen it, or had it done. She rose and struck him with a chair; he caught the chair and held it; he did not see the defendant strike with a stick; he had a small stick that he could bend about any way. While they were scuffling, James Baker came to the door and fired a pistol; they had been drinking beer, James Baker included. Rosa Baker was not in the room at the time of the difficulty.

The character of the witness Taylor was proved to be good by several witnesses.

The prosecutrix being recalled by the State, testified that her sister, Rosa Baker, came into the room before Gardner struck her, and carried her out.

His Honor charged: "It is the duty of the jury to reconcile the evidence, if they can, and if there is a reasonable doubt in their minds as to his guilt, it is their duty to acquit the prisoner. There are two kinds of evidence for your consideration in this case—positive evidence and negative evidence. For instance, Sarah R. Smith testified, that the defendant struck her three licks. Rosa Baker testified that the defendant struck her sister three licks; that she was in the room and saw the defendant strike her. Now, this is what is called positive evidence.

"Taylor says that he saw the witness Sarah R. Smith strike Gardner, the defendant, but did not see the defendant strike her. This is both positive and negative evidence.

" What McCall says about not seeing Rosa Baker at the time of the difficulty, is negative evidence, and what Taylor says about not seeing Gardner strike Mrs. Smith, is negative evidence. To illustrate; if six men were to swear that they did not hear this court house bell ring this morning at the usual hour for the summoning of the Court, that would be negative evidence. If six other men were to swear that they heard the court house bell ring, and were present and saw the sheriff ring it at that time, this would be positive evidence. I use this comparison for the purpose of illustration merely. As triers of the fact, it is the province of the jury to determine the weight of the evidence. They see the witnesses, and the manner in which they give in their evidence, and hear the testimony as to their character. It is for the jury to say what they believe, and how much they believe. If they have a reasonable doubt as to the guilt of the defendant, as I said before, it is their duty acquit.

"If the defendant sought a fight, or provoked the prosecutrix to strike at him with a chair, the defendant cannot justify a blow, on the ground of self-defence. If the defendant struck the prosecutrix to prevent her from striking him with a chair, he is justified in doing so, provided he used no more force than was necessary to prevent her from doing it.

"No mere words will justify a blow. If the defendant and prosecutrix got into a quarrel, and he struck her in consequence of words used by her, he would be guilty."

To this charge, the defendant excepted. There was no exception on the trial, to the admission or rejection of testimony. There was a verdict of guilty, and judgment against the defendant, from which he appealed.

*Attorney General,* for the State.
*Mr. D. A. Covington,* for the defendant.

ASHE, J. (after stating the facts). The only exceptions to the charge of the Court were, that there was error in the instructions

as to the distinction between positive and negative testimony, and that the instructions as to the difference between these kinds of evidence, was calculated to make an impression upon the minds of the jury, prejudicial to the defendant, and that the Judge laid down an abstract proposition of law, without any specific reference to the case. To that part of the charge in which the abstract proposition was laid down by his Honor, we are unable to see from the record, to what the exception relates. The exception is too indefinite. It is the duty of an appellant to the Supreme Court, to see that the case is so made out, as distinctly to present the points upon which the judgment below is sought to be reviewed. *Flaniken* v. *Lee,* 1 Ired., 293 ; *State* v. *Cowan,* 7 Ired., 239.

As to the other exception, we do not concur with the counsel for the defendant, that the instructions given by his Honor, with regard to the distinction between positive and negative testimony, and the case put by him in illustration of the difference, was calculated to have a prejudicial effect upon the jury. For his Honor, after stating the distinction between the different sorts of evidence, refrained from telling the jury that more credit was to be given to postive than to negative testimony, which is the general rule applicable to such a case. *Henderson* v. *Crouse,* 7 Jones, 623. But he was careful to tell the jury, that the case put by him of the testimony in regard to the ringing of the bell, was an illustration merely, and he proceeded to qualify the illustration, by telling them that they were the triers of the fact, and it was their province to determine the weight of the evidence,—that they saw the witnesses, and the manner in which they gave in their evidence, and heard the testimony as to their character, and it was for them to say what they believed, and how much they believed. Even if the illustration in the abstract, had been calculated to have the prejudice ascribed to it by the defendant's counsel, this explanation would certainly have had the effect to remove from the minds of a jury of ordinary intelligence, any erroneous impression.

We do not think the defendant had any reason to complain of the charge.    It was more favorable to him than he had any right to expect.

His Honor might have told them, that there was but one witness, and he the defendant, who testified that he did not strike the prosecutrix, while there three witnesses who contradicted him—the one who saw and felt the blows—a second who saw the blows—and a third who heard them, and although the defendant proved a good character, and the two female witnesses were of a sullied character, they were corroberated by their father, whose character was not impeached, and by the physician, who testified to the fact, that there was a gash and knotts upon the head of the prosecutrix, which it is hardly probable to believe were inflicted otherwise than in the manner described by the State's witnesses; and then the witness McCall, who was examined by the defendant, and was present and saw it all, does not corroberate the testimony of Taylor.    If he could have done so, he certainly would have been examined by the defendant with regard to the fight; but he was only examined as to the presence of Rosa Baker.    The State was not called upon to examine him upon that point.    The jury were well warranted in finding the defendant guilty.

There is no error.    Let this be certified to the Superior Court of Union county, that the case may be proceeded with according to law.

No error.                                                   Affirmed.